Hi, Velez-Velez et al. v. Puerto Rico Highway and Transportation Authority et al. May I please sit down? Why don't you wait a moment and we'll let the courtroom settle down. Mr. Frontera. This is Attorney Juan Morales Frontera. May I please report? I represent the appellant in this case, Ms. Sonia Velez-Velez and her husband, Pedro Rodríguez. This is, I would like to, I would like to reserve two minutes for rebuttal. Yes, you may have it. I'm sorry. This is a political discrimination claim for Puerto Rico. I know this is a topic that comes forth to this first circuit often. Yes. And this circuit has dealt with it and knows the standards and knows the issues that this type of case is coming. So I will go straight to the issues with respect to our brief. Okay, let's start with the statute of limitations. The district court viewed this as a case much like the Rick's case where notice of intent to terminate is given along with some language that, and of course, you have due process rights, you can get a hearing. And it's clear that within, suit was not brought within one year of that notice of termination letter. And so your argument is that despite Rick's, there was no problem with the later lawsuit. The issue is that Rick's does not deal with a lottermail hearing. The case in Rick's is a different type of hearing than a lottermail hearing. In this case, there is no dispute that on the February 10, 2010 letter that Ms. Sonia Velez received, she was advised that she had, and the letter states specifically, that prior to adopting a final decision, you have a right to an informal administrative hearing. That is a lottermail hearing. In the case of Rick's, the grievance procedure that was presented in that case, in the Supreme Court case, was a remedy for a prior final decision, not an opportunity to influence that decision before it. That is Rick's at page 261 and 262. So the hearing, the February 10, 2010 letter that I received, that my client received, informing her that she had the opportunity to go to an administrative informal hearing is a different procedure than the one stated in Rick's. She had the opportunity to influence the decision because the decision wasn't final. The decision in this case was based upon a series of administrative rulings having to do with whether her appointment was null and void. It wasn't in particular to her. It had to do with a category of employees. The notice says, and so in compliance with our law, we are notifying you that your original transfer was null and void and consequently to order that your service be terminated. Then it says, in accordance with state law, you have a hearing on this. But in fact, what was she going to argue at that hearing? That this ruling of law was wrong? Is that what her argument was? That the determination, the ruling, the final determination of law was wrong. She had the opportunity to present before the corporation in an administrative informal hearing that the reasoning of the corporation on the law was wrong and the corporation is giving her, is advising her that she has the opportunity. This was not a final decision. And plaintiff has, in this case, Sonia Velez, had a property interest over her employment. And as having a property interest over her employment, she has a right to an informal hearing on the Lothar Mill and that was the corporation, what they did. If this court established a difference in different type of Lothar Mill hearings. So under your rule, it isn't until she's been through the full hearing and the notice of termination has been effectuated and she's actually been terminated, that's when the statute of limitations is passed. That's the final decision. That's the final decision that reeks talk about. I need you to just dig into this because I couldn't figure it out from the briefs. Yes. Is her argument that what she would have presented at her hearing, would her argument have been that in fact her transfer was done pursuant to a merits-based evaluation or was her argument that at the time she was transferred, there was no merit-based decision required? No. What she would have presented, I think that. And she did have a hearing so you know what she did. Nula and Boyd, other resolutions of the corporation because what we have here is that the corporation enacted a corporate resolution in 2001, okay, authorizing the corporation to make transfers from Puerto Rico agencies to this public corporation. And what the corporation did is that in 2010 they approved a resolution leaving without effect the resolution of 2001. And by leaving without effect the resolution of 2001 declaring Nula and Boyd all the transfers that were made by those. And what my client presented is that she complied with the regulations of the corporation at the time the transfer was made and that the resolution of 2001 was a valid one under the law. Now, she had the opportunity to present that to the corporation and say you're making an error. You're committing an error. Okay. Don't do it. Okay. But that's, this error is in common to a whole lot of people. And what she's saying is your legal reasoning is incorrect. She is not saying no, no, you're wrong because I don't fall into this category of employees. Correct? No. She was clear that she was under the resolution of 2001 that was left without effect. Okay. But be that as it may, the final determination was not February 10th. And it is clear from the record that the hearing that she had in the summer of 2010 was a lottery hearing. It was not a rigged hearing. Okay. Thank you. Now, with respect to, so our proposition is that the case is not time barred and the statute of limitation began to run on December when she received the final determination. With respect to the other issues, I know this court can review the novel, the entire case with respect to summary judgment as this court decided in Ocasio-Versus-Fortunio was set. But I will leave it there. Go ahead. I just have one more question. So there was a whole group of employees who got a similar notice. Is that correct? Yes. And was everyone then who got the notice notified that they nonetheless were entitled to an individualized hearing? Yes. And all of them were PDP employees. That goes to the merits of the case. Yes. Anything else going on with that? Huh? Is anything else happening with that? Besides us? Is there a litigation in the state court system in the Puerto Rico case? No. There's an administrative process, an appellate administrative process. After that informal hearing, she filed an administrative process. Okay. And that's ongoing? Yes. That's ongoing. Okay. Good morning. May it please the court? Good morning. My name is Jasmine Gonzalez. I'm the legal representative for the Puerto Rico Highways and Transportation Authority and the defendants in their official capacity, Hernandez and Gomila. Your Honors, I would like to first state that in the administrative proceeding, just for the court to be clear, the plaintiff was reinstated in her job. So now she's working for the PRTSA. So we will also like to ---- Wait a minute. That would moot this case. Counsel, has she been reinstated? She's been reinstated at the process of the settlement, the process of disappeal. But the damage stated, the political distribution of the state and the damages on the debt of the debtor, that is still ongoing. She was reinstated for her job, but she has not been ---- With back pay? No. All right. So this is about back pay. Back pay, yeah, and damages in the Puerto Rico. Yeah. Okay. She was reinstated as a result of the settlement hearing in the process. Okay. Thank you very much. Thank you, Your Honor. We would also like to address the issue of the judgment as to the time bar defense. We would like to distinguish the case that actually the plaintiff, in this case, used to ask for an issue to be reviewed by this honorable court, that is the case of Baltodano. We would like to only draw the attention of the court that in that case, particularly ---- Yes. Was she reinstated as a result of an administrative decision, or was she reinstated because if it was the result of an administrative decision, doesn't that strengthen their argument that the February notice wasn't final? Your Honor, there was two ---- And that there was an opportunity for her to present evidence which would have been relevant to the reinstatement of her job? Your Honor, no. There was two proceedings going on at the same time. So there's administrative proceeding and the proceedings in this case. As part of the settlement of this, the settlement intents of this case, the employer decided to reinstate this plaintiff. Nevertheless, the issue as to the back pay and other damages and other claims that were pending, still pending, there were no agreement as to that effect, Your Honor. And I'm not the attorney of the administrative proceeding. Nevertheless, the administrative proceeding hasn't concluded yet. Thank you. I'm going to ask the question again that Judge Thompson made because, frankly, she receives a letter telling her that she is entitled to an administrative hearing. Yes, Your Honor. A decision as adverse to her is made. Yes, Your Honor. She appeals that. That's correct. And that decision below, the administrative decision is reversed and she's reinstated. Am I correct on those facts? No, Your Honor. No? No. All right. Tell me what happened. No. She's reinstated in lieu of the settlement efforts in this case, not in the administrative proceedings, Your Honor. You settled everything in this case except for back pay? Back pay and damages, correct. He just said that was a result of the administrative appeal. No, the settlement hearing that this court has before Judge Cortez. Exactly. That's part of this case, Your Honor. Our settlement office was able to bring you folks to a resolution on reinstatement. Is it of this plaintiff alone? I know that's not the whole group. What about the other folks who got the layoff notice? Answer. Go ahead. I'm sorry, Your Honor. We represent other plaintiffs from that group of employees that was dismissed, and that plaintiff also has been stated as part of the problem. But it was a mediating issue that the preparation took in the process of settlement, and they decided to set up only the issue of restatement and leave the case go through with respect to back pay and damages. So is the administrative proceeding, the appeal that you took to the administrative decision, is that stayed? Yes, Your Honor. It's not. Although it is pending. Is it a state pending resolution of us deciding something? No. They don't have the capacity to establish damages for discrimination. So wait a minute. As a matter of Puerto Rican law, if she were to go into this administrative hearing, they could reinstate her, but they could not give her any back pay as a matter of Puerto Rican law? Is that what's going on? Well, Your Honor, as part of the administrative proceeding, she will be entitled to reinstatement, and any other license or maybe back pay that he will be entitled to. So under state law, put aside this lawsuit. If she were reinstated, she could get back pay? Your Honor, she will be reinstated, and she will accrue any benefit that she will be entitled to. That will be the administrative hearing. Under Puerto Rican law, that's a simple question. Yes, Your Honor. Would she be entitled to back pay? Back pay, yes. Damages, no. The issue will be the date of the back pay at determining whether the evidence showing the administrative proceedings. That will be. All right. Let me go back to the first of the hearing. When she went into that hearing,  Well, as to my knowledge in administrative proceedings before governmental entities, the official examiner will be in charge of determining whether the employee supported its position. It's the opportunity for the employee to show that she has proof to rebut the intention that was already contained in the notification letter, in the termination letter. And if she met her burden in the eyes of that examiner, she could be reinstated to a position, right? She could be, but the official examiner, what the official examiner does is it makes a recommendation to the secretary that in the end it's the Could the examiner have reversed the legal reasoning on which she was being told that she was being terminated? I don't think so, Your Honor. No, I don't think so either. I don't think so, Your Honor. She could have proved she was not in the class of people to whom this legal That's precisely the But that is not her case. She concedes she's within this class of people. She is just saying the agency is wrong in its legal reasoning. That's correct, Your Honor. And the thing is that this And what my colleagues are getting at in part is that if the agency were mistaken and she was not in that class of people, which sometimes happens, if she could prove that, then she could get reinstatement with back pay so that the RICS problem may become more refined in terms of what it is she's actually arguing. Yes, Your Honor. But the important thing here is to let you know that there will be actually from the outcome of the administrative hearing, there will be no back pay because she was not suspended from her job. From the notification on February 2010 to the hearing that was on December and the final determination that was on December 23, 2010, she was working. She was not suspended. Yes, of course. They say it's our intent to terminate you after you have this hearing. Exactly. Okay. The hearing, by its nature, is a remedy to the prior decision, not an opportunity to influence the decision before it is made. The hearing, Your Honor, it's a way to give the due process to the employee as required by the state law. I was ruling for the Supreme Court. In RICS. Right. Thank you. Thank you, Your Honor. Good morning. Michelle Camacho on behalf of defendants in their individual capacities. Honorable Court, this is the first time something like this happened for me. I'm probably sure for other counsels, too. But the way these things develop, Counsel, Sister Counsel was not part of the settlement process. And every statement that she brought up to this Court was part of the confidential settlement agreement that the parties agreed not to brought before this Court in order not to influence the decision of this appeal. Okay. So she was not part of it and it was brought, but I just want to feel the need to say something. I don't understand. I have a question. You mean it's sealed? The fact, is this a public fact that she has been reinstated? Okay. Okay. Isn't there a harassment claim involved here also? Yes. Well, is that time barred? It is time barred because all the elements and the events that she described in the allegations are not brief. They are confined to a certain period of time that ended in March 2010. And the complaint was filed in December 2011, more than a year passed after the last event of harassment happened in the court, in the authority. Right. So your view is even under the continuing violation doctrine, the last act was more than a year before, and therefore that ends the matter. Yes, and more than that, for an harassment, we believe that there has to be some kind of contact on her presence in the agency. And what happened here is that she was on vacation leave since December 17, 2010. And so she was not in the agency. She was not in the authority. She was not there. She was on vacation. And she filed a complaint a year and more after that, on December 23, 2011. So even in the continuing violation theory, there was no contact more than a year before she filed a complaint. Okay. Thank you. Do you have any other questions? Thank you. Okay. With respect to Chief Judge Lynch questioning if the official examiner could find out that the corporation erroneously applied, erroneously concluded the nullification of my client's appointment, yes, the official examiner could have determined that the corporation's decision to nullify my client's appointment was wrong. And that was part of what was presented to the official examiner. With respect to the time bar of the harassment claim, Your Honor, there is evidence in this case that since Mr. Fortunio appointed Hernandez-Gregorat to be the executive director of the corporation, and Hernandez-Gregorat appointed Mr. Luis Sanchez-Casanova as director of human resources, Luis Sanchez-Casanova as director of human resources of the corporation specifically stated to my client that he was being pressured by Hernandez-Gregorat to terminate certain employees in the human resources office that hold specific positions there, and that he was feeling that pressure from Hernandez-Gregorat and he had been pressured. That's from the record, clear from the record. My client was the person in charge of the appointment division. So through my client, every appointment in the corporation had to come through. Now, the corporation, instead of following the procedure, they appointed Ms. Carrasco, that had a similar position to our client, to a trust position and began to give Ms. Carrasco several of my client duties. And that was constantly, constantly during all of the process. Now, I'm sorry. I'm sorry.  I'm sure. Thank you very much. Thank you.